# Daughters of the American Revolution of Allegheny County, Appellant, *v.* Schenley (No. 2).

*Principal and agent—Power of attorney—Laying out streets—Vacation of streets.*

Where the owner of unimproved land in the midst of a large city authorizes her attorney in fact " to lay out lots in such form and fronting on such streets, lanes and alleys or areas as in his judgment may be advisable," the attorney in fact may join in a petition to councils to vacate streets, and if 'his principal afterwards formally ratifies his act, there is no possible ground for attacking the validity of the ordinance passed in response to the petition.

Argued Nov. 4, 1902.  Appeal, No. 190, Oct. T., 1902, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1902, No. 513, dismissing bill in equity in case of Daughters of the American Revolution of Allegheny County v. Mary E. Schenley, Frank F. Nicola, John W. Herron and the City of Pittsburg.  Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.  Affirmed.

Bill in equity to quash municipal ordinances.

The facts appear by the report of the Daughters of the American Revolution v. Schenley, ante, p. 572, and by the opinion of the Supreme Court filed in the present case.

*Error assigned* was decree dismissing bill.

*John Reed Scott*, with him *J. W. White* and *S. W. Childs*, for appellant.

*William W. Smith*, with him *T. D. Carnahan*, city solicitor, for appellee.

OPINION BY MR. JUSTICE DEAN, January 5, 1903 :

This bill was filed praying the court to quash the ordinances in Nos. 136 and 137, October term, 1902, which the same court was petitioned to quash in proceedings at law.  The appeals in those cases and from this decree in equity were all

argued together before us. We reversed the decree of the court below in Nos. 136 and 137, quashing the ordinances of councils vacating Fort street and Point alley in opinion handed down herewith. Anticipating such possible or probable event, the Daughters of the American Revolution filed this bill, substantially averring the same facts as in the petitions to quash, and praying for the same decree. The answer denied the averments of the bill. The court below after hearing, dismissed the bill for the reason that plaintiffs had already invoked the statutory remedy and therefore could have no relief in equity. This decree is directly in appellee's favor but it can do them no harm except in so far as the findings of facts by the learned judge of the court below may be inconsistent with it. In the ninth finding of fact the court says: "At the time of the signing and presentation of the petition to councils and the passage of the ordinances, Mary E. Schenley had no knowledge of the transaction. Sometime after the passage of the ordinances she first heard of it and was satisfied with what John W. Herron had done and afterwards ratified his act." This finding is too narrow; it does not bring out the scope and full significance of the fact. Mrs. Schenley was a resident of London, England; to manage, control and supervise her extensive and large property holdings in Pittsburg, from the very nature of the case, she could not minutely know all the specific acts necessary to or incident to the proper management of her estate. By her letter of attorney of July 23, 1900, she conferred on him very large powers over her property. It does not specifically authorize him to sign for her petitions to councils for vacation of streets and alleys on which her land abutted ; but such power is plainly implied in the fifth clause of the letter, thus: "The said John W. Herron is also hereby authorized and empowered to lay out lots in such form and fronting on such streets, lanes and alleys or areas as in his judgment may be advisable." She owned many large plots of land, unimproved, and which when streets and alleys were opened would cut up into many city lots suitable for occupation and building; this both the principal and attorney knew; she desired to utilize and realize on this property; it was practically useless without streets and alleys; so she gave her attorney full power to lay out lots in such form and fronting on such streets, lanes and alleys as in his judgment

might be advisable. Take the plot before us : nine and one half acres, the whole of which was hers and over which she had full control; what the buying or leasing public would demand in means of access to the lots carved out of this large tract of land was wholly problematical when the power was executed. It might desire the lots to conform to older streets extended through this tract in accordance with general plans and the vacation of streets and alleys already laid out. The demands and even whims of the public would appreciate or depreciate the value of lots. So far as her property was concerned, her agent could lay out a street or alley on any part of it, but she did not contemplate an independent settlement on her land or the establishment of a village within the city ; she knew in the general management of this property it must be made to conform to the general plan and improvement of the city. In the process of creating streets, others must be vacated which did not so conform and which became useless. The agent could exercise no judgment if in laying out and fronting lots he was tied down to streets already planned.

It seems to us clear the power to join in asking for vacation of streets and alleys which in his judgment would be of advantage to the property of his principal was plainly implied in the power. Besides, both the principal and agent so interpreted the written authority, and the principal afterwards formally ratified his act, which is equivalent to precedent authority.

Nor do we think the court's tenth and twelfth findings of fact are correct. The tenth is as follows : " By the vacation of Fort street and Point alley all access to the Block House property is entirely destroyed except through the dwelling house on Penn avenue." How access to the Block House property is destroyed when the very deed conveys to the Daughters of the Revolution an entrance way from Penn avenue twenty feet wide to the Block House we do not see; true, at present this entrance is obstructed by an old building, the property of Mrs. Schenley, but if she does not tear this down they can, for it is on their land.

As to the twelfth finding, that the Block House will be irreparably damaged, that is a mere inference not warranted by the facts. There will no longer be a street at the one side of the one hundred by ninety feet plot, but there will be a clear

twenty foot space all around it, with a twenty foot entrance from one of the principal streets of the city. The outside view of the Block house will be unobstructed; the replacement of the old and tumble down buildings on Mrs. Schenley's land by new, improved and more sightly structures, will but add to its conspicuousness as a relic of time long past.

Therefore, while we concur in the decree of the court below, we do so for different reasons than those given by the learned judge who made it. As the facts found by him are wholly contradictory of those developed by the record in Nos. 136 and 137, October term, 1902, on which last we based our decree in those cases, it is proper we should give our reasons for affirming the decree in this case. Plaintiffs have no equity on which to base a decree in their favor. We have considered with care the able argument of the counsel for appellant, tending to demonstrate, that equity has jurisdiction according to the old definition that equity is the correction of that whereof the law by reason of its universality is deficient. We neither affirm nor deny his conclusion. The illustrations, however, put in his argument are not necessarily conclusive of its soundness. Says appellant's counsel:

" If a property owner have no recourse to the courts for the purpose of attacking an ordinance passed upon a petition purporting to be signed by a majority in number and interest of abutting owners, then the careful provision in the act of 1895 as to a three fourths majority is absolutely nugatory. Under such condition any street in the city of Pittsburg could be vacated by a simple majority vote of councils upon a petition signed by any two individuals, provided they averred they were the majority of owners in number and interest of the abutting property. There might be a thousand other owners of property abutting on that street, and is it possible they would be utterly helpless and unable to take any legal steps to strike down an ordinance passed on such a petition? Must these property owners stand calmly by and see their rights swept away from them by the passage of an ordinance under an act of assembly, but in plain violation of its purpose and spirit, and, being without statutory relief, have no relief in equity? "

It is easy to put extreme and remotely possible cases as

illustrations of what might result, if those entrusted with power under our government abuse it. As is said by Chief Justice BLACK, in Sharpless v. Mayor, etc., of Phila., 21 Pa. 147 : " The great powers given to the legislature are liable to be abused. But this is inseparable from the nature of human institutions. The wisdom of man has never conceived of a government with power to answer its legitimate ends and at the same time incapable of mischief." The power to councils to vacate streets and alleys without appeal from their action may be abused, but they are the power next to the people and are directly answerable to them for any abuse of power, and under our form of government there is no other cure for such abuse. It may be that our Republican form of government is not the best that could be devised ; but the people think it is, and appellants will have to rest content with it.

The decree is affirmed.